**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Herald Hotel Associates, L.P.*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                                       :
                                                             :  Chapter 11
Herald Hotel Associates, L.P.                                :
                                                             :  Case No.: 20- 12266 (     )
                        Debtor.                              :
------------------------------------------------------------ x

**DECLARATION OF BRAD THURMAN PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 OF THE LOCAL BANKRUPTCY RULES FOR THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

I, Brad Thurman, declare, pursuant to section 1746 of title 28 of the United States Code, that:

1.  I am the Vice President of Herald Hotel Associates, L.P. ("Hotel" or "Debtor") a limited partnership organized under the laws of the State of New York. The Hotel intends to file a voluntary chapter 11 petition with the Clerk of this Court on or about September 22, 2020 (the "Petition Date"). I am duly authorized to make this declaration (the "Declaration") on behalf of the Debtor.

2.  I am familiar with the Debtor's day to day operations, business, and financial affairs, and books and records. I am above eighteen years of age and I am competent to testify.

3.  I submit this Declaration in accordance with Rule 1007-2 of the Local Rules of this court (the "Local Bankruptcy Rules") to assist this court (the "Court") and parties in interest in understanding the circumstances that compelled the commencement of the chapter 11 case,

and in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge and my discussions with other members of the Debtor's management team. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

5. Parts I through III of this Declaration provide an overview of the Debtor's business, events giving rise to the commencement of this chapter 11 case and the Debtor's capital structure. Part IV sets forth the information required by Local Bankruptcy Rule 1007-2

### I. THE DEBTOR'S BUSINESS

6. The Debtor operates the Hotel which is a full-service hotel located on 32nd and Broadway in Manhattan. Thurman Associates, LLC is the ninety nine percent (99%) owner of the Hotel. 1260 Herald Square, LLC is the general partner and owns the other one percent (1%). The Debtor is not the fee owner of the land underneath the Hotel but is a party to a ground lease executed in 1989 for a term of 99 years (the "Lease"). The Debtor believes the Lease is more in the nature of a joint venture, financing device, disguised sale and/or other arrangement rather than a true lease for the purposes of the Bankruptcy Code. The Debtor will attempt to resolve disputes with the Landlord (defined below) regarding the Lease. Absent a resolution, the Debtor intends to commence an adversary proceeding seeking to obtain a ruling from this Court declaring the Lease is not a true lease within the meaning of section 365(d)(4) of the Bankruptcy Code.

7. The Hotel is one of the oldest hotels in Manhattan, originally opening in 1899, and has gone through many iterations during this span of 121 years. The Hotel now features 531 rooms, a restaurant featuring a wine bar, 7,798 square feet of meeting space plus 1,155 square feet of pre-function space, a fitness center, a business center, and a concierge desk.

8. Additionally, the Hotel comprises ±33,100 square feet of retail space (that includes the existing restaurant space as well as the space currently under major renovation to become the new bi-level restaurant). The Hotel also contains all necessary back-of-the-house space required for a hotel.

9. On March 18, 2020, in response to COVID-19 pandemic management temporarily closed the Hotel furloughing all staff other than those essential to maintaining and securing the Hotel (the "Covid Closure").

10. Prior to the Covid Closure, the Debtor employed a total of approximately 176 employees (approximately 142 of which are represented by Local 6-Hotel Motel Trades Council). In the ordinary course of business, the Hotel pays, on a weekly basis, to its non-debtor affiliate amounts necessary to cover its certain non-union payroll costs.

11. Certain Hotel employees are represented by Local 6 – Hotel Motel Trades Council. The administrative, accounting, housekeeping supervisors, sales and marketing, reservations, and security departments are excluded from the collective bargaining agreement between the Hotel and Local 6 (the "CBA"). In addition, the Hotel's food & beverage department, that includes hotel room service, and is leased to a third party, is excluded from the CBA, except for banquet and catering servers and housemen.

12. As further discussed below, the Debtor intends to commence this chapter 11 case in order to attempt to preserve a going concern value in these extraordinary challenging times for New York City hotels in view of the COVID-19 pandemic. Recently, the iconic New York Hilton in Time Square announced it was closing permanently. According to industry statistics, hotel occupancy in Manhattan was approximately 35% in August. Hotel occupancy in Manhattan was 93% in August 2019. The Debtor intends to utilize the tools contained in the Bankruptcy Code to obtain needed relief from certain provisions of the CBA, mitigate union

severance obligations, restructure the Lease, and reach an agreement for a modification of the Hotel's mortgage held by JPMorgan Chase Bank, N.A. ("Chase").

## II. EVENTS LEADING TO THE CHAPTER 11 CASE

13. Since the recession of year 2008/2009 there has been a major increase in hotel room supply in Manhattan. This has negatively affected the Hotel's profitability.

14. Growth of hotel average room rates has been stagnant for approximately ten (10) years – only returning to 2008 levels in 2019 thus room rate increases were falling behind normal inflation during that period.

15. The prior franchisor, Radisson, provided less than 15% of room revenue to the Hotel even though the Hotel was the only Radisson in Manhattan.

16. The Debtor's management elected to separate from Radisson and associate with Hilton which is generally considered a higher level flag in the hotel industry. In order to enter into a franchise relationship with Hilton, the Hotel was required to comply with Hilton's Property Improvement Plan (PIP) and to comply with Local Law #11 façade repairs. The Debtor's owners funded these upgrades which are not yet completed. The total renovation costs between 2015 and 2019 were approximately $35 million. Commencing in January 2020, the Hotel borrowed $12,250,000 from the Debtor's equity interest owners in order to fund additional renovations and cover operating losses.

17. In December 2018, the Hotel commenced operations as the Hilton Curio but because of the ongoing renovations, the Hotel could only have a "soft opening" as a Hilton. The Debtor intends to maintain and comply with its franchise agreement with Hilton.

18. In March 2020, the Hotel was within six to eight (6 to 8) months from the completion of the renovations. Unfortunately, the COVID-19 pandemic caused the New York City government to stop "non-essential" construction during COVID-19, thus halting the Hotel's

renovation project. In June, the City lifted the ban on non-essential construction and the Hotel recommenced the renovations.

19.     The Debtor has attempted to reach an agreement with the Landlord (defined below) under the Lease to reflect the current economic reality in view of the COVID-19 pandemic. Although the Debtor was able to reach an agreement for a short-term deferral of rent, the Debtor has been unable to reach an agreement for a longer term modification of the Lease. On September 16, 2020, the Landlord served a notice of default upon the Debtor and has threatened to terminate the Lease. The Debtor intends to continue negotiations with the ground lessor during the chapter 11 case and it is optimistic it will reach an agreement with the Landlord.

20.     The Debtor has also been in negotiations with the holder of its senior secured debt (Chase) who holds a mortgage loan in the amount of approximately $14.2 million. This loan was originally $65 million in 2007 and has been paid down to its current level of approximately $14.2 million. The loan matured in July of 2020 and while the Debtor has been in good faith negotiations with Chase with respect to a restructuring and extension of the loan, the parties have not yet reached a definitive agreement. The Debtor believes Chase will consent to the use of its cash collateral and expects to submit a cash collateral stipulation to this Court for approval.

21.     Over the years, one of the major impediments to the Hotel's profitability has been the onerous provisions of the CBA that represents those of the Hotel's union employees. The Debtor intends to take advantage of Section 1113 of the Bankruptcy Code and negotiate for necessary modifications to the CBA and if necessary, seek to reject the CBA.

### III. PRE-PETITION CAPITAL STRUCTURE AND INDEBTEDNESS

22.     As noted, the Debtor is privately held limited partnership. Harold Thurman, directly or indirectly owns all of the Debtor's equity. As of the Petition Date, Chase held a first mortgage secured by the Lease and it is owed approximately $14.2 million. Aside from Chase,

the Hotel's primary creditors are Seasons Affiliates (the "<u>Landlord</u>") and the New York Hotel and Motel Trade Council ("<u>Union</u>").[1]  Recently, an arbitrator under the industry wide CBA issued a decision clarifying the industry's obligations for severance as a result of the Covid-19 pandemic. The arbitrator ruled all union hotels which have been closed since the beginning of the pandemic in mid March are obligated to start making certain structured severance payments to union employees commencing October 1, 2020.  As a result thereof, and with a full reservation of rights, pursuant to Article 52 of the CBA, the Hotel's Covid Closure has likely triggered severance to the Hotel's union employees which the Debtor estimates to be approximately $3.5 million.  The Debtor reserves all of its legal rights and options as it relates to the arbitrator's industry wide decision.

23. The Debtor received $3,870,000.00 in PPP funds on April 10, 2020. As of September 18, 2020, the Debtor has $420,000.00 remaining.  The funds have been utilized as permitted by the PPP program and the Hotel expects the loan will be forgiven.

## IV. INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

24. I have been advised that Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor which is set forth below.

25. In accordance with Local Bankruptcy Rule 1007-2(a)(3), there has been no prepetition committee of creditors formed in this chapter 11 case.

26. In accordance with Local Bankruptcy Rule 1007-2(a)(4), **Exhibit A** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the twenty (20) largest unsecured claims (excluding insiders) against the Debtor.

---

[1] Out of an abundance of caution, the Debtor has listed all of its employees on its schedules as potential creditors. However, it can also be said that the Union holds the aggregate claim on behalf of its union members and the Debtor intends to negotiate with the Union concerning any employee related claims.

27. In accordance with Local Bankruptcy Rule 1007-2(a)(5), **Exhibit B** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the five (5) largest secured claims against the Debtor.

28. In accordance with Local Bankruptcy Rule 1007-2(a)(6), **Exhibit C** hereto is a list containing a summary of the Debtor's assets and liabilities.

29. To the best of my knowledge, none of the Debtor's property is in the possession or control of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

30. In accordance with Local Bankruptcy Rule 1007-2(a)(9), **Exhibit D** hereto is a list of the premises leased, or held under other arrangement, from which the Debtor operates its business.

31. In accordance with Local Bankruptcy Rule 1007-2(a)(10), **Exhibit E** hereto is a list providing the location of the Debtor's substantial assets, the location of its books and records, and the value of any assets held by the Debtor outside the territorial limits of the United States.

32. In accordance with Local Bankruptcy Rule 1007-2(a)(11), **Exhibit F** hereto is a list of litigation commenced against the Debtor.

33. In accordance with Local Bankruptcy Rule 1007-2(a)(12), **Exhibit G** hereto is a list containing the names of the individuals who comprise the Debtor's existing senior management, with its tenure with the Debtor, and a brief summary of its relevant responsibilities and experience. The Debtor intends to continue to operate and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

34. In accordance with Local Bankruptcy Rule 1007-2(b)(1), **Exhibit H** hereto is the estimated amount of the payroll to employees of the Debtor (exclusive of officers, directors and stockholders) for the 30-day period following the commencement of the Debtor's chapter 11 case.

35. In accordance with Local Bankruptcy Rule 1007-2(b)(2)(A), **Exhibit I** hereto contains the amounts to be paid to the Debtor's officers, directors, and stockholders for services for the 30-day period following the commencement of the Debtor's chapter 11 case.

36. In accordance with Local Bankruptcy Rule 1007-2(b)(3), **Exhibit J** hereto contains the estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the 30-day period following the commencement of the Debtor's chapter 11 case.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 22nd day of September 2020

/s/ Brad Thurman
Brad Thurman